# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**RONALD E. BRADLEY**,

       Plaintiff,

    v.

**MARK NOOTH**, et al.,

       Defendants.

Case No. 2:16-cv-1377-PK

**OPINION AND ORDER**

**Michael H. Simon, District Judge.**

United States Magistrate Judge Paul Papak issued Findings and Recommendation in this case on December 12, 2017. ECF 58. Judge Papak recommended that Plaintiff's motion for summary judgment be denied and Defendants' motion for summary judgment be granted.

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474

U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review de novo magistrate's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate's recommendations for "clear error on the face of the record."

Plaintiff, proceeding *pro se*, timely filed an objection (ECF 61). Plaintiff objects to all of the findings and conclusions in the Findings and Recommendations. Accordingly, the Court reviews the pending motions *de novo*.

## BACKGROUND

Plaintiff Ronald E. Bradley originally brought *pro se* a claim against Defendants under 42 U.S.C. § 1983, asserting that Defendants violated Plaintiff's due process rights. Plaintiff alleged that Defendants deprived Plaintiff of his personal property without proper process by considering Plaintiff's move from Snake River Correctional Institution ("SRCI") to county jail after Plaintiff had obtained a partial remand from the appeal of his original criminal conviction to be a "transfer" instead of a "transport." As a result, after Plaintiff left SRCI in January 2013, his property was disposed of under Oregon Administrative Rule 291-117-0110(6) (the "Transfer Rule") instead of Rule 291-117-0120(6) (the "Transport Rule"). Plaintiff's property was shipped to his mother's residence and when Plaintiff was moved back to SRCI in December 2013, he no longer had access to his property. Plaintiff alleged that Defendants acted with disregard in

interpreting and applying the Oregon Administrative Rules for handling personal property with respect to inmate transfers and transports.

Plaintiff further alleged that upon his return to SRCI, he filed grievances relating to his property. He then filed a small claims action in state court. Although the state court judge ruled in favor of SRCI, the state court judge noted that the Transport Rule (under which property is stored) had been poorly written.

On July 28, 2016, the Court *sua sponte* dismissed Plaintiff's claims. ECF 6. The Court dismissed Plaintiff's claims for two reasons. First, because Plaintiff had already unsuccessfully adjudicated his loss of personal property in an Oregon small claims action, Plaintiff could not challenge in federal court the unfavorable decision by the small claims court. Second, the Court found that because the Oregon Tort Claims Act provides an adequate postdeprivation process and remedy, the alleged lack of predeprivation process was not actionable under Section 1983.

On August 25, 2016, Plaintiff filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 60(a). ECF 8. Plaintiff again noted that the small claims judge had commented that the rule was poorly written. Plaintiff questioned the adequacy of the postdeprivation remedy provided by the Oregon Administrative Rules. Construing Plaintiff's motion liberally, the Court interpreted the motion to clarify the claim Plaintiff intended to allege in his complaint. Based on this construction, the Court understood Plaintiff to be alleging that Defendants followed their usual administrative practice in disposing of Plaintiff's property without predeprivation process and that Plaintiff sought injunctive relief to require that Defendants' administrative process for disposing of inmate property when "transferring" or "transporting" inmates comply with due process requirements. The Court granted Plaintiff's motion for reconsideration, finding that as so clarified, Plaintiff was alleging that the disposition

of Plaintiff's property was not a "random and unauthorized" deprivation of property such that postdeprivation process would suffice but was instead alleging deprivation of property from an administrative process that did not provide adequate process. Under this type of alleged conduct, postdeprivation remedies could not save an otherwise unconstitutional act. *See Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985) (noting that when "the prison officials' actions followed an administrative process" that did not provide adequate process, it is "not the kind of 'random and unauthorized conduct' at issue in *Parratt* and *Hudson*, and therefore, unlike in those two cases . . . the state could have provided predeprivation processes"); *see also Zimmerman v. City of Oakland*, 255 F.3d 734, 738 (9th Cir. 2001) ("But the [Supreme] Court made it clear that the holdings in both cases [*Parratt* and *Hudson*] were restricted to cases in which prison officials acted in random, unpredictable, and unauthorized ways. The Court stated explicitly that postdeprivation remedies could not save an otherwise unconstitutional act from unconstitutionality in cases in which the state officer acted pursuant to some established procedure.").

The Court further held that although the availability of a postdeprivation remedy may not be dispositive of Plaintiff's claim for injunctive relief regarding the alleged unconstitutional administrative process, Plaintiff would have standing to bring such a claim only if he could demonstrate a realistic threat of repeated future injury. The Court noted that it appears that the only way to demonstrate such a threat in this case would be for Plaintiff to allege that he is likely to win another appeal and again be transferred to county jail, which the Court found to be unlikely. Nonetheless, because it was not absolutely clear that Plaintiff could not allege sufficient facts to establish standing, the Court allowed Plaintiff to replead this claim.

With respect to Plaintiff's claim for money damages, however, the Court reaffirmed its previous holding that this claim was fully and finally litigated in small claims court and that Plaintiff was thus precluded from adjudicating that claim in federal court. The Court thus declined to reconsider its dismissal of Plaintiff's claim for money damages with prejudice.

Plaintiff then filed his First Amended Complaint. In this complaint, similar to Plaintiff's original complaint, it is not clear that Plaintiff is alleging an administrative process that violates inmates' constitutional rights. Plaintiff's claim for relief alleged in his amended complaint is that the named defendants acted with disregard to the proper interpretation and application of the administrative procedures adopted in relation to the disposition of inmate property. This mirrors what Plaintiff had alleged in his original complaint, which is the claim the Court had originally interpreted as a claim for a random and unauthorized deprivation of property rather than a claim of a constitutionally-deficient administrative process.

Plaintiff added allegations, however, relating to how he is facing repeated threat of future injury. Plaintiff alleges that he filed another appeal, the second appeal was granted, he will thus be "going back to Washington County jail" for further court proceedings, and his personal property will again have to be disposed of in some manner. Plaintiff alleges that he therefore faces a threat of repeated harm that is not conjectural or hypothetical.

Defendants filed a motion to dismiss, arguing that Plaintiff lacks standing; that he fails to state a claim because there is an adequate postdeprivation remedy; that even if Plaintiff does challenge Oregon's administrative system, the Oregon Administrative Rules at issue are constitutional and comport with due process; that Plaintiff fails to state a claim against Defendants in their personal capacity because injunctive and declaratory relief cannot be sought against them in that capacity; and that Defendants are protected by qualified immunity when

sued in their official capacity. Plaintiff filed a motion for summary judgment on his due process claim.

## LEGAL STANDARDS

### A.  Article III Standing

The U.S. Constitution confers limited authority on the federal courts to hear only active cases or controversies brought with standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546-47 (2016); *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013). Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 136 S. Ct. at 1547.

To have standing, a plaintiff must have a "personal interest . . . at the commencement of the litigation." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). The constitutionally required personal interest must satisfy three elements: (1) an injury-in-fact, *i.e.*, an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent; (2) a causal connection between the injury-in-fact and the defendant's challenged behavior; and (3) likelihood that the injury-in-fact will be redressed by a favorable ruling. *Id.* at 180-81, 189; *see also Spokeo*, 136 S. Ct. at 1547 (reiterating that the "irreducible constitutional minimum" of standing consists of "an injury in fact . . . fairly traceable to the challenged conduct of the defendant, and . . . likely to be redressed by a favorable judicial decision").

An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). An injury is "concrete" if it is "'*de facto*'; that is, it must actually exist," meaning that it is "'real' and not 'abstract.'" *Id.* "'Concrete' is not, however, necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, [the Supreme Court has]

confirmed in many . . . previous cases that intangible injuries can nevertheless be concrete." *Id.* at 1549.

## B. Mootness

A federal court does not have jurisdiction "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). "A claim is moot if it has lost its character as a present, live controversy." *Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*, 581 F.3d 1169, 1172-73 (9th Cir. 2009) (quoting *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997)). To determine mootness, "the question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be *any* effective relief." *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244-45 (9th Cir. 1988) (quoting *Garcia v. Lawn*, 805 F.2d 1400, 1403 (9th Cir. 1986)) (emphasis in original). If a course of action is mostly completed but modifications can be made that could alleviate the harm suffered by the plaintiff's injury, the issue is not moot. *Tyler v. Cuomo*, 236 F.3d 1124, 1137 (9th Cir. 2000). A case becomes moot "only when it is impossible for a court to grant *any* effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 133 S.Ct. 1017, 1023 (2013) (emphasis added) (citation omitted). The party alleging mootness bears a "heavy burden" to establish that a court can provide no effective relief. *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (quoting *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006)).

"Standing and mootness are similar doctrines: Both require some sort of interest in the case, and both go to whether there is a case or controversy under Article III." *Jackson v. Cal. Dept. of Mental Health*, 399 F.3d 1069, 1072 (9th Cir. 2005). The doctrines, however, have

important differences—standing doctrine ensures that scarce judicial resources are devoted to disputes in which the parties have a concrete stake, and "[m]ootness issues arise later in the case, when the federal courts are already involved and resources have already been devoted to the dispute." *Id.* at 1072-73. That is why the Supreme Court recognizes exceptions to mootness that are not allowed as exceptions to standing, such as the exceptions for "voluntary cessation" and "capable of repetition, yet evading review." *See Laidlaw*, 528 U.S. at 189-90.

### C. Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the

expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

A court must liberally construe the filings of a *pro se* plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). "'Unless it is absolutely clear that no amendment can cure the defect, . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action.'" *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)). Under Federal Rule of Civil Procedure 8(a)(2), however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

**D. Summary Judgment**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## DISCUSSION

### A. Claim Alleged by Plaintiff

In the Court's Order reconsidering its original *sua sponte* dismissal, the Court liberally construed Plaintiff's combined filings of his motion for reconsideration and his original complaint as explaining Plaintiff's intended cause of action. The Court expressly noted that it interpreted Plaintiff's motion for reconsideration as "clarifying" Plaintiff's complaint. In amending his complaint, Plaintiff did not take the opportunity to allege his claim in the manner the Court had liberally construed Plaintiff's claim. Instead, Plaintiff left his allegations the same, and only added new allegations relating to the how he faced the realistic threat of repeated harm.

Nonetheless, the Court must liberally construe the filings of *pro se* litigants. *Hebbe*, 627 F.3d at 342. Indeed, even if the *pro se* plaintiff fails to identify the correct legal theory or statute, that is not necessarily fatal to the plaintiff's claims as long as the facts alleged provide sufficient notice to the defendant of the circumstances of the plaintiff's claim. *See, e.g.*, *Morris v. Schroder Capital Mgmt. Int'l*, 445 F.3d 525, 530 n.3 (2d Cir. 2006) ("A complaint need not set out the correct legal theory on which the claim is based, so long as the complaint provides full notice of the circumstances giving rise to the plaintiff's claim"); *Coleman v. O'Grady*, 1994 WL 66684, at *2, 19 F.3d 21 (7th Cir. 1994) (Table) ("The complaint need not specify the correct legal theory nor point to the right statute."); *Sulehria v. City of New York*, 670 F. Supp. 2d 288, 319–20

(S.D.N.Y. 2009) ("The current version of the complaint does not plead a claim for conspiracy and does not mention section 1985. Nonetheless, *reading it and the motion papers together*, we infer . . . that plaintiff does seek to assert a conspiracy claim. Moreover, the fact that it may be labeled as arising under section 1983 rather than 1985 is not fatal since the courts look to the facts pled rather than the legal label affixed to the allegations." (emphasis added)); *see also Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346 (2014) ("Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

In his motion for summary judgment, Plaintiff notes that the Court had construed his claim as one challenging Oregon's administrative process and not the misapplication of that process, and thus argues that Defendants' assertion in its motion to dismiss that Plaintiff's First Amended Complaint does not raise such a challenge is inaccurate. In his objections to the Findings and Recommendation, however, Plaintiff states that the magistrate judge correctly found that the basis for Plaintiff's complaint does not rest on the administrative procedure for the disposition of inmate property, but on the misapplication of that procedure. But Plaintiff is a layperson who is clearly confused by the legal discussions regarding the parameters of his claim and does not understand the legal implications of describing his claim. The Court thus does not hold him to the statement in his objection versus the statement in his motion for summary judgment. *Cf. Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) (declining to hold a *pro se* litigant bound to his deposition testimony stating that he was suing a party in his official capacity because "[t]o hold otherwise would threaten[ ] to ensnare parties who may have simply

been confused during their deposition testimony and may encourage gamesmanship by opposing attorneys" (first alteration added, second alteration in original) (quotation marks omitted)).

To the extent Plaintiff intends to bring a claim in his First Amended Complaint challenging the misapplication by Defendants of the Oregon Administrative Rules, then Plaintiff is bringing a claim that amounts to a random, unauthorized act. For such a claim, Oregon's Tort Claims Act serves as sufficient postdeprivation process, and the claim is dismissed. *See Zinermon v. Burch*, 494 U.S. 113, 128-29 (1990); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981). As the Court previously construed, however, although not well articulated by Plaintiff, he is alleging that Defendants engaged in an authorized, intentional deprivation of Plaintiff's property. He is alleging that the Oregon Administrative Rules relating to the disposition of personal property when an inmate is transported for a long duration versus transferred, because the transport rule is poorly drafted, creates an administrative process that results in an unconstitutional deprivation of inmates' property rights. For that claim, postdeprivation remedies will not suffice and thus that claim is what must be further considered. Defendants have sufficient information in the record in this case to put them on notice to defend this allegation, which they have done in their motion to dismiss and in response to Plaintiff's motion for summary judgment.[1]

**B. Standing**

In Defendants' response to Plaintiff's motion for summary judgment, Defendants' argued and provided evidence that Plaintiff had recently again been moved to Washington County jail as a result of his second successful appeal, that it is unknown how long he will be in county jail,

---

[1] Moreover, it is in the interest of judicial efficiency to consider this claim now in light of Defendants' challenges on the merits, because if the Court were to dismiss Plaintiff's First Amended Complaint as inadequately alleging such a claim, the Court would allow Plaintiff leave to refile to more clearly allege this claim.

that Defendants chose this time to store Plaintiff's property instead of dispose of it in the manner Defendants' handled it the last time Plaintiff was moved to county jail, and that Defendants now withdraw their previous denial that the rule on transports instead of transfers applies to the disposition of Plaintiff's property. Defendants argue that these facts, which occurred after Plaintiff filed his amended complaint (and after the pending motions were filed), demonstrate that Plaintiff does not face a threat of repeated injury and thus does not have standing.

Defendants confuse standing and mootness. Article III standing is evaluated by considering the facts as they existed at the time of the commencement of the action. *See Laidlaw*, 528 U.S. at 180 (noting that "we have an obligation to assure ourselves that FOE had Article III standing at the outset of the litigation"); *Barry v. Lyon*, 834 F.3d 706, 714 (6th Cir. 2016) ("To uphold the constitutional requirement that federal courts hear only active cases or controversies, as required by Article III, section 2 of the federal constitution, a plaintiff must have a personal interest at the commencement of the litigation (standing) that continues throughout the litigation (lack of mootness)."); *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007) ("The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint."); *Becker v. Fed. Election Comm'n*, 230 F.3d 381, 386 n.3 (1st Cir. 2000) (noting that *Lujan* "clearly indicat[es] that standing is to be 'assessed under the facts existing when the complaint is filed'" and that evaluating standing when facts later change "conflates questions of standing with questions of mootness: while it is true that a plaintiff must have a personal interest at stake throughout the litigation of a case, such interest is to be assessed under the rubric of standing at the commencement of the case, and under the rubric of mootness thereafter"); *McFalls v. Purdue*, 2018 WL 785866, at *8-10 (D. Or. Feb. 8, 2018) (discussing standing and mootness). Mootness is the doctrine under which courts ensure that "a live

controversy [exists] at all stages of the litigation, not simply at the time plaintiff filed the complaint." *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1253 (9th Cir. 2007).

Thus, Defendants' arguments that conduct that occurred after Plaintiff filed his complaint rendered Plaintiff without standing are arguments of mootness, not standing. Accordingly, Defendants' contention that Plaintiff lacks standing based on those facts is rejected. The Court will instead analyze whether Plaintiff's claim has become moot.

## C. Mootness

The Court assumes without deciding that Defendants' conduct post-filing has mooted Plaintiff's claims. Plaintiff argues that Defendant's cessation of their improper behavior "does not eradicate the effects of the alleged violation." Plaintiff has a point in arguing that Defendants' cessation of conduct does not necessarily mean Plaintiff's claim is no longer live. "Voluntarily cessation" is a well-recognized exception to mootness. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). The Supreme Court has explained the voluntary cessation exception as follows:

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power.

*Id.* As the Supreme Court further explained, in a footnote:

> "The test for mootness in cases such as this is a stringent one. Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.' A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. . . . Of course it is still open to appellees to show, on remand, that the likelihood of further violations is sufficiently remote to make injunctive relief unnecessary. This is a matter for

> the trial judge. But this case is not technically moot, an appeal has
> been properly taken, and we have no choice but to decide it."

*Id.* n.10 (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203-04

(1968) (alterations in original) (citations omitted); *see also Laidlaw*, 528 U.S. at 189 (describing

the voluntary cessation exception, citing to *City of Mesquite* and *Concentrated Phosphate*).

Defendants still follow the allegedly poorly drafted rules that Plaintiff alleges caused the

deprivation of his constitutional rights. Defendants have voluntarily chosen to follow one rule

versus the other rule, but have provided no reason they cannot change their minds as soon as this

litigation is dismissed. The Ninth Circuit has found that "an executive action that is not governed

by any clear or codified procedures cannot moot a claim" and falls within the voluntary cessation

exception. *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015). Even if Defendants'

reconsideration of the applicable rule indicates some intention of changing its policy going

forward, without a more rigorous policy statement or change to the Oregon Administrative Rules

to more clearly make one rule the governing rule, the Ninth Circuit advises courts to be "less

inclined to find mootness where the 'new policy . . . could be easily abandoned or altered in the

future.'" *Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014) (finding that this type of

conduct falls within the voluntary cessation exception).

Defendants' voluntary cessation may have rendered certain aspects of Plaintiff's

originally-alleged harm no longer a realistic threat (such as the Transfer Rule being applied

*before* he was sent to county jail), but Defendants have a "heavy burden" to show that it is

"absolutely clear" that their allegedly wrongful behavior "could not reasonably be expected to

recur." *Laidlaw*, 528 U.S. at 189 (quoting *Concentrated Phosphate*, 393 U.S. at 203). This

alleged wrongful behavior includes, for example, applying the Transfer Rule to Plaintiff's

property. Because the same administrative rules are still in place, the Defendants have not shown

that it is absolutely clear they will not apply the Transfer Rule to Plaintiff's property while he is in county jail if this litigation is dismissed. *See, e.g.*, *Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*, 581 F.3d 1169, 1173-74 (9th Cir. 2009) (emphasizing the heavy burden on the defendant to show mootness, and that this burden cannot be met merely by arguing that the plaintiff had not done enough to show future harm).

At this stage in the proceedings, Defendants have not met their "heavy burden" of showing that it is "absolutely clear" that the alleged wrongful conduct cannot reoccur. Accordingly, the voluntary cessation exception to mootness applies in this case and Plaintiff's claim is not moot.

**D. Failure to State a Claim**

**1. Whether the administrative rules are constitutional**

The two Oregon Administrative Rules discussed by Plaintiff are the Transfer Rule and the Transport Rule. The Transfer Rule provides:

> Transfers to Facilities Other Than Department of Corrections: If the inmate is transferred to a facility other than the Department of Corrections, it shall be the responsibility of the inmate to make arrangements to have the property mailed out or picked up by a designated individual. The inmate shall be responsible for the cost of postage to mail the item(s). If the inmate has not made these arrangements 45 days from the date of transfer, the property shall be disposed of as excess property in accordance with procedures set forth in Disposition of Property (OAR 291-117-0140).

Or. Admin. R. 291-117-0110(6). The Transport Rule provides:

> When an inmate is transported from the facility for court appearances, medical trip or other authorized trip for a period longer than 24 hours, his/her personal property shall be inventoried, secured, and stored until such time the inmate returns to the facility. Staff shall utilize the Personal Property Inventory List CD 611 (male inmate) or CD 306 (female inmate) for such purposes.

Or. Admin. R. 291-117-0120(6). The Disposition of Property rule, referenced in the Transfer Rule, provides that "excess property" will not be disposed of until after a written order from a staff member "directing the inmate to mail out or dispose of the inmate's excess property." Or. Admin. R. 291-117-0140(2)(b).

Plaintiff argues that when an inmate is transported to a court appearance that requires a stay at a facility other than the department of corrections, particularly an extended stay, these rules do not provide sufficient guidance as to whether the Transfer Rule (disposition) or Transport Rule (storage) applies. Plaintiff notes that because he was only partially successful on his appeal, Defendants knew that Plaintiff would have to return to SRCI regardless of the outcome of his retrial, and thus no matter how long he was in county jail Defendants should have stored instead of requiring the disposition of Plaintiff's property.

The state court judge, in deciding Plaintiff's small claims case, opined that the judge believed that a long term stay such as occurred during Plaintiff's first appeal was not likely to have been intended to fall within the Transport Rule. ECF 36 at 6 (discussing the Transport Rule and stating "It may be that [the drafters of the Rule are] referring to the shorter term or temporary, whatever; I think that's the intention"). The judge continued, stating: "Well, I guess you could make the argument that you were temporarily in Washington County even though it lasted a good part of the year of 2013. But as I say, I don't think the intention [is] there—it was poorly drafted." The judge ultimately concluded that the Transfer Rule applied, and found in favor of the defendants in the state court case.

Plaintiff relies heavily on the state court judge's comment that the Transport Rule is "poorly drafted." But a poorly drafted rule is not necessarily an *unconstitutional* rule. The deficiency in the Transport Rule as alleged by Plaintiff is that, at worst, a government employee

would believe that an inmate is being "transferred" instead of "transported," and would thus apply the Transfer Rule instead of the Transport Rule (as happened to Plaintiff during his first move to county jail in 2013). Thus, the real question is whether the Transfer Rule provides constitutionally-sufficient process.

"The Due Process Clause forbids the governmental deprivation of substantive rights without constitutionally adequate procedure." *Shanks v. Dressel*, 540 F.3d 1082, 1090-91 (9th Cir. 2008). To prevail on a procedural due process claim, a plaintiff must establish: (1) a constitutionally protected liberty or property interest; (2) a deprivation of that interest by the government; and (3) the lack of adequate process. *Id.* at 1090. "Notice and a meaningful opportunity to be heard are hallmarks of procedural due process." *Ludwig v. Astrue*, 681 F.3d 1047, 1053 (9th Cir. 2012) (quotation marks and alterations omitted) (quoting *Guenther v. Comm'r*, 889 F.2d 882, 884 (9th Cir. 1989)). In analyzing whether adequate procedural due process was provided, the Supreme Court directs courts to balance: (1) the private interest that will be affected; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedures; and (3) the government's interest, including the functions involved and the burdens of additional or substitute procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The Ninth Circuit has held that when state law recognizes "personal property," including goods and chattels, then a prisoner has a constitutionally-protected property interest in such property. *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011). Oregon law recognizes personal property. *See, e.g.*, Or. Rev. Stat. §§ 278.005, 307.020. Thus, Plaintiff had a protected property interest in his personal property. *Greene*, 648 F.3d at 1019. Plaintiff was deprived of his property interest in his property when his property was removed from SRCI. The

question is whether Plaintiff was provided adequate process. The Court considers the factors set forth *Mathews*.

### a. Plaintiff's interest

Plaintiff has an interest in his personal property. Because he is a prisoner, however, his interest is not unfettered. "[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

### b. Risk of erroneous deprivation and value of additional procedures

Authorized deprivations are permissible if carried out pursuant to a regulation that is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Due Process Clause is violated only when the agency "prescribes and enforces forfeitures of property without underlying statutory authority and competent procedural protections." *Greene*, 648 F.3d at 1019 (alterations and quotations omitted).

The Transfer Rule itself does not provide that an inmate will be given notice in writing or otherwise. Without notice, the rule runs afoul of due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (noting that a fundamental requirement of procedural due process is notice); *see also Ludwig*, 681 F.3d at 1053 (same). The Transfer Rule, however, states that if an inmate has not made the appropriate arrangements to dispose of his or her property 45 days from the date of transfer, the property shall be disposed of as excess property in accordance with the procedures set forth in Oregon Administrative Rule 291-117-0140, the Disposition of Property Rule. The "excess property" section of this rule requires that "[s]taff shall direct inmates in writing to bring their aggregate property within the capacity of designated storage space" and that the facility will hold the property "for no more than 45 days following the date of

staff's written order directing the inmate to mail out or dispose of the inmate's excess property." Or. Admin. R. 291-117-0140(2)(b). Thus, even if no written notice is given to an inmate under the Transfer Rule, no property will be disposed until 45 days after written notice is given under the Disposition of Property Rule. Accordingly, the two rules combined create a process under which property will not be destroyed or mailed without notice to the inmate.

Under the Transfer Rule, the inmate is afforded the opportunity to provide an address for the property to be mailed, at the prisoner's expense, or for the property to be picked up. This allows a prisoner who cannot afford shipping or mailing expenses to still retain his personal property by having it picked up. If the inmate fails to make these arrangements, then the property will be destroyed. Although the Transfer Rule would ideally have its own notice provision, considering the process in its entirety, the Court does not find a significant risk of an erroneous deprivation of property.[2]

The additional procedures would likely be a hearing, which would provide an inmate the opportunity to explain any unique circumstances. The likelihood is that inmates would request at the hearing storage of greater than 45 days before disposition, storage in lieu of disposition (like Plaintiff wanted in 2013), or that the correctional facility pay for the cost of shipping the property. Although there would be some value in a hearing so an inmate could explain any unique circumstances to his or her situation, providing additional process that would only likely

---

[2] There may be a slight risk that a Department of Corrections employee will fail to give notice under the Transfer Rule because it does not contain any express notice provision (although notice is implied because otherwise the inmate cannot make the required arrangements), the 45 days will expire, and an employee could interpret the 45 day period from the Transfer Rule as meeting the 45 day period from the Disposition of Property Rule. An inmate's personal property could then be destroyed without any notice having been given. The Court does not find this to be a likely scenario. Moreover, because this would not be following the procedure set out in the Disposition of Property Rule and would thus be an unauthorized disposition of property, it would be one for which postdeprivation process would suffice.

result in the correctional facility being asked to store an inmate's personal property for unknown periods of time does not have significant value. Inmates do not have a right to have their personal property stored or for the government to pay shipping costs.

### c. Government's interest

The government has "a compelling interest in maintaining security and order in its prisons." *Whiteshield v. Forbes*, 1989 WL 143081, at *2, 889 F.2d 1097 (9th Cir. 1989) (Table) (quoting with approval *Harris v. Forsyth*, 735 F.2d 1235 (11th Cir. 1984)). Permissible rules keeping order include, for example, "a penitentiary rule prohibiting inmates from loaning books to other inmates without authorization" and under such a rule it is permissible to confiscate books. *Id.* (citing *United States v. Russell*, 256 F. Supp. 479, 480 (M.D. Pa. 1966)).

The Oregon Department of Corrections has an interest in the orderly disposition of personal property when an inmate is transferred. There would be significantly increased administrative and other burdens if the government had to provide hearings, figure out itself where to send an inmate's personal property, or store numerous inmates' personal property.

### d. Conclusion

Consideration of the *Mathews* factors supports the constitutionality of the Transfer Rule. Moreover, the Ninth Circuit's opinion in *Greene* strongly supports that the Transfer Rule provides sufficient process. In *Greene*, prisoners had historically been permitted typewriters but after two incidents of violence using parts from typewriters, the prison changed their regulations and banned prisoners from possessing typewriters. 648 F.3d at 1017. Prisoners were given the option of shipping their typewriter to someone, donating it to charity, or having it destroyed. *Id.* One inmate challenged the ban as a deprivation of personal property without proper due process. *Id.* at 1019. The Ninth Circuit explained:

> Here, prison officials enacted a system-wide ban with no
> exceptions. While Downs was not offered an individual pre-
> deprivation hearing, he was notified of the change in the regulation
> and given an adequate opportunity to comply with it. With respect
> to the personal property of prisoners, that is all the process that is
> due.

*Id.* Similarly, the Oregon Department of Corrections' process provides notice and adequate

opportunity to comply. Given the unique property considerations of the personal property of

prisoners, that is all the process that is due. *Id.*; *cf. Wolff*, 418 U.S. at 556. Because no

amendment or additional discovery could cure the defect in Plaintiff's complaint, this claim is

dismissed with prejudice.

## 2. Claims against Defendants in their personal capacity

Defendants argue that Plaintiff may not seek declaratory and prospective injunctive relief

from Defendants in their official capacities. There is some confusion regarding whether

declaratory and prospective injunctive relief may be brought against state officials in their

individual capacities, and courts are divided on the issue. *Compare Greenawalt v. Indiana Dep't

of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005) (noting that "section 1983 does not permit injunctive

relief against state officials sued in their individual as distinct from their official capacity");

*Novin v. Fong*, 2014 WL 6956923, at *13 (N.D. Cal. Dec. 8, 2014) (noting that "Plaintiffs cannot

obtain injunctive or declaratory relief in an individual capacity suit under § 1983"), *with MCI

Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271 F.3d 491, 506 (3d Cir. 2001) (noting that

"individual state officers can be sued in their individual capacities for prospective injunctive and

declaratory relief to end continuing or ongoing violations of federal law"); *Arellano v.

Blahnik*, 2017 WL 2833117, at *9 (S.D. Cal. June 30, 2017), *report and recommendation

adopted as modified on other grounds in Arellano v. Blahnik*, 2017 WL 3530896 (S.D. Cal.

Aug. 17, 2017) ("However, an official can be sued directly for damages and injunctive relief

under § 1983 in their [sic] individual capacity as these actions are not seen as actions against the State." (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). Because the Court has found that Plaintiff does not plausibly state a claim for which relief can be granted, the Court does not need to reach this issue.

**E.  Nominal and Punitive Damages**

If Plaintiff's claim were not dismissed, the Court agrees that Plaintiff could potentially seek nominal and punitive damages. The Court previously dismissed Plaintiff's claim for money damages for the loss of his property as precluded by his small claims action in state court. Defendants argue that preclusion bars Plaintiff's claims for nominal and punitive damages as well.

"Issue preclusion arises in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and final determination in a prior proceeding." *Nelson v. Emerald People's Util. Dist.*, 318 Or. 99, 103 (1993). Issue preclusion bars parties from re-litigating issues when five conditions are met:

> 1. The issue in the two proceedings is identical. 2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding. 3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue. 4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding. 5. The prior proceeding was the type of proceeding to which this court will give preclusive effect.

*Nelson*, 318 Or. at 104 (citations omitted).

Nominal and punitive damages, however, are remedies available for constitutional violations. *See Hazle v. Crofoot*, 727 F.3d 983, 991 n.6 (9th Cir. 2013) ("Nominal damages must be awarded" if a constitutional violation is established even if "no actual injury is incurred or can be proven."); *Ditullio v. Boehm*, 662 F.3d 1091, 1097 (9th Cir. 2011) (noting that "punitive damages are available in actions under § 1983"). Plaintiff states that he did not allege these

damages in his state court action and there is no evidence or indication that he did.[3] Thus, the

Court does not find that these types of damages were actually litigated in Plaintiff's state court

case. Accordingly, issue preclusion does not apply.

To recover punitive damages, however, requires that the state official's "conduct is

shown to be motivated by evil motive or intent, or when it involves reckless or callous

indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

The First Amended Complaint does not sufficiently allege facts supporting that Defendants acted

with the requisite motive or with reckless or callous indifference to Plaintiff's due process rights.

Thus, even if Plaintiff's claim survived, his claim for punitive damages would not.

### F. Qualified Immunity

Although the Court dismisses Plaintiff's claim on the merits, the Court notes that

Defendants argue that they are entitled to qualified immunity. It is well established, however,

that qualified immunity only provides immunity from suit for damages and is not an immunity

from suit for declaratory or injunctive relief. *See, e.g.*, *Vance v. Barrett*, 345 F.3d 1083, 1091

n.10 (9th Cir. 2003) (noting that "a defense of qualified immunity is not available for prospective

injunctive relief"); *L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993)

(noting that qualified immunity "does not bar actions for declaratory or injunctive relief");

*Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 527 (9th Cir. 1989) ("Qualified

immunity is an affirmative defense to damage liability; it does not bar actions for declaratory or

injunctive relief."). Thus, if Plaintiff's claim had survived on the merits, Defendants would not

have been entitled to qualified immunity with respect to Plaintiff's claim seeking declaratory and

---

[3] No party has provided the Court a copy of the small claims complaint, or the judge's opinion, or the court transcript other than the one page where the judge commented that the Transport Rule was poorly drafted, which was submitted by Plaintiff in support of his motion for summary judgment.

injunctive relief. The Court agrees with Defendants, however, that qualified immunity would apply to immunize Defendants for Plaintiff's claims for nominal and punitive damages (if punitive damages had survived).

## G. IFP Status

Plaintiff requests that if the Court dismisses his complaint, the Court grant Plaintiff a certificate of appealability. A certificate of appealability, however, is unique to petitions for habeas corpus. The Court construes Plaintiff's request to be that the Court not revoke Plaintiff's *in forma pauperis* status. When a district court dismisses the case of a plaintiff who is proceeding *in forma pauperis*, the court must determine whether an appeal of the case would be frivolous or otherwise in bad faith. 28 U.S.C. § 1915(a)(3); *see also Coppedge v. United States*, 369 U.S. 438, 445 (1962). If the court so determines, then it must recommend that the plaintiff's *in forma pauperis* status be revoked. *Id.*

A complaint is frivolous "where it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Martin v. Sias*, 88 F.3d 774, 775 (9th Cir. 1996). The term "frivolous," when used to describe a complaint, "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke*, 490 U.S. at 325. Because the Transfer Rule does not contain its own express notice provision, Plaintiff's claim is not "frivolous" as that term is used in § 1915(a). Accordingly, the Court will not recommend that Plaintiff's *in forma pauperis* status be revoked.

## H. Request for Court-Appointed Attorney

Plaintiff requests that the Court appoint a volunteer attorney. Because this case is being dismissed with prejudice, the Court will not appoint Plaintiff an attorney. If Plaintiff files a notice of appeal and would like the assistance of an attorney to proceed with his appeal, his request for a court-appointed volunteer attorney needs to be made to the Ninth Circuit.

**CONCLUSION**

The Court declines to adopt the Findings and Recommendation. ECF 58. For the reasons discussed in this Opinion and Order, Defendants' motion to dismiss (ECF 28) is GRANTED. Plaintiff's motion for summary judgment (ECF 35) is DENIED. Because Plaintiff's First Amended Complaint fails to state a claim and amendment would be futile, this case is dismissed with prejudice. The Court does not recommend Plaintiff's *in forma pauperis* status be revoked.

**IT IS SO ORDERED.**

DATED this 27th day of March, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge